**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Manuel MIGUELES,**
**Defendant–Appellant.**

**No. 87–5920**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 24, 1988.

Sheryl Lowenthal, Coral Gables, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Terry Lindsey, Mayra Reyler Lichter, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before VANCE, KRAVITCH and COX, Circuit Judges.

PER CURIAM:

Manuel Migueles challenges his conviction under 21 U.S.C. sections 846 and 841(a)(1), of conspiring to possess with intent to distribute, and of possessing with intent to distribute, a large quantity of cocaine. He appeals on the sole ground that the evidence adduced at trial was insufficient to convince a reasonable jury of his guilt. Because we find that the government presented sufficient evidence to support a finding of guilt beyond a reasonable doubt, we affirm.

We must consider the evidence admitted at Migueles's trial "in the light most favorable to the government, accepting all reasonable inferences that support the verdict," (*United States v. Curra–Barona*, 706 F.2d 1089, 1091 (11th Cir.1983)), mindful that the evidence need not "exclude every reasonable hypothesis of innocence [nor] be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reason-able doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc),[1] *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

Migueles was arrested early in the morning of May 30, 1987, in an isolated region of the Florida Keys, near a large cache of recently smuggled cocaine. At trial, the government showed that United States Customs agents at dawn were investigating a known drug off-load point, where, from a distance, they witnessed several people apparently unloading a boat that had just cruised up to the shore. As the agents made their way north up a path toward the boat, they encountered three men walking south in single-file. The first man carried a rifle, barrel pointed at the sky; the third man was later identified as the appellant Migueles. Upon sighting the agents, the three men separated and fled. Migueles and the first man ran west, the second man ran east. Less than five minutes later, an agent found Migueles, wet, freshly injured and tangled in mangrove roots at the bottom of a sinkhole. The agents searched the shoreline near where the boat came aground and found an inflatable raft loaded with ten duffel bags containing cocaine. Approximately fifteen feet from Migueles, the agents found a cocaine-filled duffel bag similar to the others. The agents located another duffel bag a short distance from where Migueles was arrested. This bag, which was dry, contained prescription drugs belonging to Migueles.

The agents took Migueles to a hospital, where he later gave an oral statement to an officer of the Drug Enforcement Administration. Migueles stated that he had been out fishing the evening prior to his arrest because he was unemployed and needed to feed his family. Migueles, an experienced captain, acknowledged that he had not fished at all earlier in the week, yet nonetheless had chosen to strike out that night during a tropical depression. The seas grew rough. Migueles recounted hav-

1. The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

ing been knocked around in the boat; that accounted for his cuts to the head and knee. The boat finally capsized, and Migueles related that he grabbed his duffel bag and swam a mile to shore, keeping the duffel bag entirely dry in the four-to-eight-foot seas by carrying it between his head and shoulder. When he reached the shore, he saw two people, one of whom shot at him. He ran; he next recalled being arrested by the Customs agent.

Migueles argues that he was merely in the wrong place at the wrong time, and that his "mere presence" at the scene of a crime cannot, as a matter of law, support the inference that he was involved in criminal wrongdoing. *See, e.g., United States v. Pintado*, 715 F.2d 1501 (11th Cir.1983). Other cases, however, have explained that presence may be considered in conjunction with all other facts and circumstances presented at trial, and the composite created may be sufficient to justify an inference of illegal activity. *See, e.g., United States v. Blasco*, 702 F.2d 1315, 1331–32 (11th Cir.1983).

The facts of this case do not fit within the narrow bounds of *Pintado*. The appellant in that case had been convicted of conspiring to possess marijuana with intent to distribute it. Around one o'clock in the morning, police had witnessed several persons unloading marijuana from a boat in a canal bordering a residential neighborhood. The police arrested seven persons in or near a house along the canal, including Pintado, who was found cowering in a second-floor bedroom closet. The government offered no evidence otherwise tying Pintado to the activities of the persons downstairs and outside; the government's evidence did not even show that Pintado would have been aware of the activities: a garage containing the marijuana was not visible from within the house, and the entire operation had been carried out "virtually silently." The police found several sets of clothing that had apparently been worn by those moving the drugs, but the government made no attempt to connect Pintado with a set of clothing. We held that there were "no objective facts or circumstances from which appellant's knowledge of the

ongoing operation could be inferred." *Pintado*, 715 F.2d at 1505.

The instant case is much more similar to *United States v. Bell*, 833 F.2d 272, 276 (11th Cir.1987). In *Bell*, we upheld four convictions on circumstantial evidence that placed the defendants at a marijuana off-loading. In the early morning, shortly after agents came upon signs of a recent drug off-loading, one defendant was apprehended hitchhiking to an uncertain destination, carrying equipment identical to equipment found near the marijuana. The other three were wandering around on private resort property, claiming to be seeking employment yet offering inconsistent stories; all were wearing wet and sandy trousers; and the threesome was located "three miles away from the offloading point in exactly the length of time estimated to have been required for them to have walked in the sand and water to the private property on which they were apprehended." *Id.* at 276. Evidence showed that all four knew one another and had agreed to rent a room in a nearby motel. These factors, combined with presence near the scene of the crime, sufficed to support a jury inference that they had conspired to possess and distribute marijuana, and had possessed the drug with intent to distribute it.

The case against Migueles also presents factors other than mere presence at the scene of the crime. The jury was entitled to draw adverse inferences from Migueles's presence in a remote location at an early hour, near a large quantity of recently off-loaded cocaine; from the agents' spotting Migueles walking behind two men, one carrying a gun, away from the offloading; from Migueles's flight, in the same direction as one of his claimed captors, upon encountering the agents; and from the incredible story that Migueles offered the drug-enforcement agent. Taken together, these factors could reasonably support a jury verdict of guilty beyond a reasonable doubt of conspiracy to possess and distribute, and actual possession with

intent to distribute, the cocaine found on the inflatable raft.

AFFIRMED.