**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles DENT, also known as William Brown, and Ivy T. Tucker,
Defendants–Appellants.**

**Nos. 91–3113, 91–3114.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1992.

Decided Jan. 26, 1993.

As Amended Feb. 8, 1993.

Rehearing and Rehearing En Banc
Denied April 2, 1993.

Terry M. Kinney, Asst. U.S. Atty. (argued), Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

Kevin P. Connor (argued), Judith A. Scully, Chicago, IL, for Ivy T. Tucker.

Carol A. Brook, Mary M. Rowland (argued), Office of Federal Public Defender, Chicago, IL, for Charles Dent.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

This appeal arises from the convictions of the defendants Charles Dent and Ivy Travis Tucker for being felons in knowing possession of a firearm in violation of Title 18, United States Code, Section 922(g). Several evidentiary issues are raised in addition to a challenge of the government's recall of a witness at trial in response to notes from the jury before the close of evidence. Defendant Tucker further challenges the enhancement of his sentence by allegedly constitutionally invalid convictions. Both defendants were found guilty at a jury trial in February 1991.

*Facts and Procedure*

This case began with a simple traffic stop in a parking lot in Lansing, Illinois, on January 31, 1989. A Lansing police officer named Brad Borys testified that he saw the driver of a car run a stop sign. Officer Borys activated his lights and pulled the car over. There were two people in the car, a 1983 Datsun, the two defendants in this case. Defendant Tucker was driving the car, and defendant Dent was seated in the front passenger side of the car. The officer parked behind the Datsun, and the officer got out of his car as the defendants got out of their car. The officer asked the driver, Tucker, for his driver's license, which he did not have. The driver then gave the officer a false name. Dent, the passenger, also gave the officer a false name. During this time, the officer patted both defendants down. The car did not have any license plates but had a license applied for sticker in the rear window. Officer Borys wrote down the car's vehicle registration number ("VIN") from the sticker in the rear window and compared it with the VIN number on the driver's side of the car's dashboard.

At this point, the defendants' version of the facts diverges from the government's version. The district court at a suppression hearing held on January 16 and 18, 1991, made findings of facts consistent with the government's position. The district court found that as Officer Borys was comparing the car's VIN number that he had written down from the sticker in the rear window with the number on the dashboard, he saw a gun protruding from underneath the driver's seat of the car. Officer Borys opened the unlocked car door and retrieved the gun, which was loaded, and placed in it in his back pocket. At about this time a back-up patrol unit which had been previously called arrived at the

scene. Officer Borys asked the arriving officer, Bruce H. Peterson, to watch the two men while he searched the interior of the car. After searching the car for approximately five to ten minutes and finding nothing more, Officer Borys told Officer Peterson that he had recovered a gun. Officer Borys did not tell Officer Peterson that he had found a loaded gun when Officer Peterson first arrived, nor did Officer Borys handcuff the defendants or tell them to get down on the ground or raise their hands in the air. After the second search of the car, defendants were placed under arrest. Tucker was searched and found to be carrying $1,700. The car was towed to the Lansing police station. Two trench coats, one nylon half-stocking, and one black mask or head covering item were recovered from the inventory search of the car at the station. The only item admitted into evidence at trial was the black mask or head covering item; the trench coats were not kept and the nylon half-stocking was lost.

Defendants' version of the facts is different at several significant points. Defendants contend that Officer Borys did not see the gun when looking at the VIN number through the front window. They both testified at the suppression hearing that the car was locked and that the officer searched Dent for the car key. They testified that Officer Borys retrieved the gun only after an extensive search of the car. Officer Borys then said to Officer Peterson something like "look what I found." Officer Peterson testified that he did not know that Officer Borys had found a gun until five or ten minutes after he arrived.

On July 25, 1990, a grand jury returned a one-count indictment charging the defendants with being felons in knowing possession of a firearm.

Defendants moved to suppress the evidence found as a result of the traffic stop. Defendants contend the evidence was found illegally. The government conceded at the suppression hearing that if Officer Borys did not see the gun sticking out from under the seat in plain view as he looked through the front window, the subsequent search was illegal and the gun should be suppressed. The district court denied the motion to suppress and found that the gun was seen by the officer in plain view as the officer looked through the front window. The district court believed Officer Borys' testimony but found that parts of defendants' testimony were unbelievable.

Several evidentiary issues raised in motions in limine prior to trial are among the issues on appeal. First, Dent moved to exclude his plea of guilty to a misdemeanor state claim for unlawful use of a weapon which arose out of the same facts. In the alternative, Dent moved to admit the portion of the state court transcript indicating the plea was against the advice of Dent's state court lawyer. The district court denied Dent's motion and granted the government's motion to bar testimony by Dent's lawyer.

Dent and Tucker moved to exclude the evidence of the masks and trench coats found in the car under Rule 403 of the Federal Rules of Evidence. The district court denied their motion and held the evidence was admissible under Rule 404(b) of the Federal Rules of Evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The government moved to admit the grand jury testimony of Roger Elayyan, who was unavailable to testify at trial, under Rule 804(b)(5) of the Federal Rules of Evidence. The district court held the statement was relevant and had the required guarantees of trustworthiness for admission. The court further found that admission of the testimony would not violate the defendants' right to confront witnesses under the Sixth Amendment of the United States Constitution.

The jury trial for the defendants began February 20, 1991, and lasted two days. After the judge dismissed the jury for the day near the end of the government's case, the judge received a note from one of the jurors. This note read: "On the bill of sale [for the car], where is the price of license and title transfer? Why is the purchaser's address the same as the address of the car

**1458**

lot? Was the mileage 11,000–plus for an '83 Datsun, a six-year old automobile." Supp.Rec. vol. II at 147. The judge received a second note apparently from the same juror. The second note read: "Who is the gun registered to?" Supp.Rec. vol. III at 169.

The district court and both parties agreed on how to respond to the questions. When the trial began the next day, the court told the jury:

> One of the jurors wrote two notes asking four questions concerning the bill of sale exhibit and the gun exhibit, both of which have been received in evidence. It would be best not to directly respond to those individual questions at this time. All of the evidence is not in. The jury has not heard the closing arguments or the instructions by the Court, which will give more information on those, as well as other matters, as they may relate to the decisions to be made, and should help clarify the matters involved. So, with that, that will be the response at this time.

Supp.Rec. vol. III at 186–87. The government then recalled Agent Laurie Jolley to the stand. Both defendants objected to the government recalling this witness to address the juror's questions. The district court overruled their objection because the government had not closed its case in chief, the court and the parties had not agreed that there could be no additional evidence after the juror's questions, and it felt obligated to ensure that the jury fully understood the matters involved.

The recalled witness, Agent Jolley, gave new testimony concerning the gun and the car. Agent Jolley testified about gun registration requirements in Chicago, Illinois, and Racine, Wisconsin. She testified about the different people to whom this gun was sold according to records that were kept and information from witnesses she interviewed. She then testified that the certificate of title for the car showed its mileage was 119,343 miles. When Agent Jolley first testified, she simply testified that the gun was operable. At that time, she also

read into evidence the grand jury testimony of Roger Elayyan.

The jury returned guilty verdicts against Dent and Tucker. Both defendants received enhanced sentences under Title 18 of the United States Code Section 924(e)(1) because each defendant had three previous violent felony convictions. The district court gave them each a fifteen-year sentence, the mandatory minimum under the sentencing guidelines. Tucker appeals the use of two of his prior convictions for his enhanced sentence. He argues that two of the guilty pleas were neither voluntarily nor intelligently made under Wisconsin law and the United States Constitution.

*Analysis*

1. The Suppression Hearing

■ Defendants contend that the district court erred in refusing to suppress the gun which was found during an allegedly unconstitutional search of the car. Defendants argue the district court's finding of fact that Officer Borys saw the gun in plain view through the car's windshield was clearly erroneous. Defendants state that Officer Borys' testimony was incredible in light of the grave discrepancies between his testimony and Officer Peterson's testimony. Officer Peterson testified that he did not see a gun in Officer Borys' rear pocket and did not learn that Officer Borys found a gun until after the extended search of the car. Officer Peterson also testified that Officer Borys did not have his own gun drawn when Officer Peterson arrived, although Officer Borys testified that he drew his gun after finding the gun in the car. Defendants rationalize that it is unbelievable that an officer who found a loaded gun would not immediately place the suspects under arrest or at least attempt to restrain them somehow. Moreover, it is also incredible, defendants argue, that the officer would not tell the arriving back-up officer, who was asked to watch the suspects, that he had found a loaded gun in the suspects' car until five or ten minutes later.

The district court rejected defendants' arguments at the suppression hearing. The court found that Officer Borys legally

stopped the defendants after they ran a stop sign and saw the gun in plain view as the officer checked the car's VIN number on the dashboard. The court found that Officer Borys got into the car without a key. The court concluded that while "the testimony of the backup Officer Peterson doesn't exactly dovetail with the testimony of Officer Borys," the officers were both credible witnesses while the defendants were not. The court stated that the fact that Officer Borys was not as careful as perhaps he should have been did not impeach his credibility.

■ A district court's findings of facts will not be reversed unless clearly erroneous. *Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir.1990); *United States v. Ingrao*, 897 F.2d 860, 862 (7th Cir.1990). Because the district court had the opportunity to hear the testimony and observe the demeanor of the witnesses, its findings are given great deference. *United States v. Sewell*, 942 F.2d 1209, 1211 (7th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1567, 118 L.Ed.2d 213 (1992); *Edwards*, 898 F.2d at 1276. When the district court's findings are based on its decision to credit one witness over another, its findings will rarely be disturbed as clear error, unless there is contradictory extrinsic evidence or the findings are internally inconsistent. *Anderson*, 470 U.S. at 575, 105 S.Ct. at 1512; *United States v. Dowell*, 724 F.2d 599, 602 (7th Cir.), *cert. denied*, 466 U.S. 906, 104 S.Ct. 1683, 80 L.Ed.2d 157 (1984).

■ The conflict within this circuit that defendants point out concerning the appropriate appellate standard of review of probable cause determinations has been resolved by *United States v. Spears*, 965 F.2d 262 (7th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 502, 121 L.Ed.2d 438 (1992). *Spears* held that both Fourth Amendment warrant and nonwarrant cases are "subject to review for clear error." *Id.* at 269. In this case, we need only consider whether the district court's factual findings were clearly erroneous because the evidence was admitted under the "plain view" exception to the Fourth Amendment's prohibition against unreasonable searches. *See Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971).

We do not find the district court's findings of facts to be clearly erroneous. The suppression hearing lasted two days, and the district court had a full opportunity to hear the testimony and observe the witnesses. The district court carefully considered the witnesses' credibility and the weight to be given to the testimony of each. The district court stated that Officer Borys gave direct and careful answers to questions both on direct and cross-examination. The district court found Officer Peterson similarly credible, and his testimony corroborated the other officer's testimony and contradicted the defendants' testimony. On the other hand, the district court found that both defendants had great reason to give false testimony as they both faced substantial sentences and both had given false names to the police.

We cannot substitute our judgment of the witnesses' credibility for the district court's unless we believe the district court was clearly erroneous in its findings. *See United States v. Sophie*, 900 F.2d 1064, 1072 (7th Cir.), *cert. denied*, 498 U.S. 843, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990). We are not even close to so doing here. Whether or not the gun was seen in plain view through the front window depends solely upon which witness is to be believed. The district court believed Officer Borys rather than Dent and Tucker; we do not find that was an abuse of its discretion.

■ We further reject defendants' argument that Officer Borys' testimony was incredible as a matter of law. Testimony is incredible as a matter of law only if it is impossible on its face, physically impossible, or contradictory to the laws of nature. *United States v. Dunigan*, 884 F.2d 1010, 1013 (7th Cir.1989). The exception is an "extremely narrow one," and we will not invoke it here. *United States v. Kuzniar*, 881 F.2d 466, 470–71 (7th Cir.1989).

### 2. The Guilty Plea in State Court

■ Dent asks this court to rule that the district court erred in excluding testimony by Dent's lawyer in state court on the misdemeanor charge that Dent pled guilty against the advice of his lawyer and that Dent had told him that he did not know the gun was in the car. Dent argues this testimony is admissible under Rule 106 of the Federal Rules of Evidence or the common law rule of completeness, Rule 806, or Rule 803(24) of the Federal Rules of Evidence. Dent contends that by refusing to admit the testimony of his state court lawyer, Dent was forced to chose between testifying himself or. allowing the guilty plea to go into evidence unimpeached.

■ The district court rejected Dent's rule of completeness argument because what his lawyer said to the court and what Dent said to his lawyer are entirely separate from Dent's plea to the judge under oath. Rule 106 allows the party against whom evidence is offered to introduce any other part of the statement or another statement which should in fairness be considered along with it. We will not reverse the district court's decision on Rule 106 unless the district court abused its discretion in that decision. *United States v. Velasco,* 953 F.2d 1467, 1474 (7th Cir.1992).

We do not find that the district court abused its discretion in refusing to admit this evidence under the rule of completeness or any other rule of evidence. Defendant wants to let his lawyer testify to Dent's exculpatory statements. Despite that the guilty plea was entered after a full discussion with the state court about the factual predicate for the crime, defendant wants evidence admitted that he told his lawyer he did not know the gun was present although he told the state judge that he did carry and possess the gun. The district court correctly concluded that the lawyer cannot testify to Dent's statements, Dent's state of mind when he accepted the plea, or the lawyer's reasons for opposing the plea. *See United States v. Dorrell,* 758 F.2d 427, 435 (9th Cir.1985) ("removing [defendant's] explanation of the political and religious motivations for his actions did not change

the meaning of the portions of his confession submitted ... [and] did not alter the fact that he admitted committing the acts with which he was charged").

Defendant's argument that this evidence should have been admitted to impeach the guilty plea is without merit. The district court concluded that the lawyer's testimony regarding Dent's lack of any knowledge of the gun was not sought simply to impeach the plea, but to prove that Dent did not know the gun was present. *See United States v. Burton,* 937 F.2d 324, 327 (7th Cir.1991) (finding government's contention that statements offered only for context and not the truth "untenable").

■ This unusual argument in favor of impeaching defendant's own admission and credibility is possible under Rule 806. The government is incorrect in both of its claims that Dent failed to preserve it for appeal and that Rule 806 does not apply to a party's own statements. Rule 806 permits impeachment of a declarant whose statement as defined in Rule 801(d)(2)(C), (D), or (E), has been admitted. But we have already held that this rule also applies to a party's own statement as defined in Rule 801(d)(2)(A) or (B) in *Velasco,* 953 F.2d at 1473 n. 5. *See* Notes of the Committee on the Judiciary, S.Rep. No. 1277, 93d Cong., 2d Sess. (1974), *reprinted in,* 1974 U.S.C.C.A.N. 7051, 7069 n. 28.

■ Dent's exculpatory statements and those of his lawyer at the plea were properly excluded under Rule 803(24) as well. There is no relevance in the lawyer's statement alone that the plea was made against the advice of counsel. Nor do we find that Dent's exculpatory statements made to his lawyer have any "guarantees of trustworthiness" as required for admission under this rule. *United States v. Romo,* 914 F.2d 889, 896 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991).

■ We further reject Dent's argument that the doctrine of unconstitutional conditions is somehow applicable here. This doctrine, first articulated in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct.

967, 19 L.Ed.2d 1247 (1968), prohibits the government from forcing a defendant to chose between two constitutionally protected rights. *Id.* at 394, 88 S.Ct. at 976; *United States v. Ashimi,* 932 F.2d 643, 647 (7th Cir.1991). Additionally, a defendant may not needlessly be penalized for asserting a constitutional right. *United States v. Jackson,* 390 U.S. 570, 583, 88 S.Ct. 1209, 1217, 20 L.Ed.2d 138 (1968). *See United States v. Pizarro,* 717 F.2d 336, 348 (7th Cir.1983), *aff'd on remand,* 756 F.2d 579 (7th Cir.), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2686, 86 L.Ed.2d 703 (1985). But Dent's Fifth Amendment right not to incriminate himself was not unfairly burdened by the district court's refusal to admit testimony by his lawyer. As the Supreme Court has repeatedly recognized, "not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid." *Corbitt v. New Jersey,* 439 U.S. 212, 218, 99 S.Ct. 492, 497, 58 L.Ed.2d 466 (1978).

### 3. The Rule 404(b) Evidence

 The district court admitted evidence at trial of the two trench coats, the half-stocking, and the black head covering under Rule 404(b) of the Federal Rules of Evidence. The district court examined the evidence under the requirements established in *United States v. Shackleford,* 738 F.2d 776 (7th Cir.1984) as modified by *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). The district court must evaluate whether:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Zapata,* 871 F.2d 616, 620 (7th Cir.1989). Because the district court properly evaluated this evidence according to these requirements, we will not second-guess the court's decision. *United States v. Hudson,* 843 F.2d 1062, 1064 (7th Cir. 1988); *United States v. Beasley,* 809 F.2d 1273, 1279 (7th Cir.1987).

We find that the district court did not abuse its discretion when it admitted this evidence. The court found the evidence probative for establishing a possible motive for carrying a gun in the car. The trench coats and other items which could be used as masks suggested to the court a possible explanation for the gun's presence. The court further found the two coats and two other items indicated a joint possession of the one gun. Whether we would have found this evidence probative does not matter on appeal since we review only for an abuse of discretion. *See United States v. Powers,* 978 F.2d 354, 360 (7th Cir.), *petition for cert. filed,* Dec. 21, 1992; *Zapata,* 871 F.2d at 621. We also will not reverse the district court's finding that the relevance of the evidence was not substantially outweighed by its prejudicial impact. The district court concluded the probative value outweighed the risk of prejudice; this conclusion was not an abuse of discretion by the district court. *See United States v. Kramer,* 955 F.2d 479, 491 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 596, 121 L.Ed.2d 533 (1992).

 Defendants contend that the government used this evidence to inflame the jury and induce the jury to convict the defendants on an emotional basis rather than on proper evidence. We reject the argument that Dent and Tucker did not receive a fair trial because of this Rule 404(b) evidence. Defendants argued to the jury in their opening and closing statements that the items were not significant of anything related to possession of a gun and even questioned the existence of the items not presented at trial, the trench coats and the half-stocking. Defendants called a witness to testify that the black head covering was an item typically used to protect a person's hair after it has been styled. Furthermore, the district court instructed the jury to use the evidence only for considering the defendants' knowledge

**1462**

of the gun and not for proof of their bad character or propensity to commit crimes. A limiting instruction mitigates the risk of unfair prejudice from the admission of Rule 404(b) evidence. *United States v. Wright*, 943 F.2d 748, 752 (7th Cir.1991).

### 4. The Grand Jury Testimony

▉▉▉ The district court admitted the grand jury testimony of Roger Elayyan under the catchall hearsay exception of Rule 804(b)(5) of the Federal Rules of Evidence. This rule permits the admission of a statement by an unavailable witness that does not fit within one of the specific hearsay exceptions but has "equivalent circumstantial guarantees of trustworthiness." Fed.R.Evid. 804(b)(5). The district court must determine that the statement goes to a material fact and is more probative of that fact than other evidence that can reasonably be found. *Id.* The court must determine that the interests of justice as well as the general purposes of the evidentiary rules will be served by admission of the statement. *Id.* We review the district court's decision under Rule 804(b)(5) for an abuse of discretion. *United States v. Snyder*, 872 F.2d 1351, 1354 (7th Cir.1989).

Grand jury testimony is admissible in this circuit under the residual hearsay exception only if it meets the stringent criteria of Rule 804(b)(5). *United States v. Guinan*, 836 F.2d 350 (7th Cir.), *cert. denied*, 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 907 (1988); *United States v. Boulahanis*, 677 F.2d 586 (7th Cir.), *cert. denied*, 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982). We have already held that grand jury testimony does not come within one of the specific hearsay exceptions in Rule 804, namely the former testimony exception of Rule 804(b)(1), and is properly considered under the residual hearsay exception. *Guinan*, 836 F.2d at 354; *Boulahanis*, 677 F.2d at 588. *See United States v. Fernandez*, 892 F.2d 976, 981 (11th Cir.1989) (stating grand jury testimony does not satisfy the requirements of Rule 804(b)(1) and considering it under Rule 804(b)(5)), *cert. dismissed*, 495 U.S. 944, 110 S.Ct. 2201, 109 L.Ed.2d 527 (1990).

▉▉▉ Admission of grand jury testimony must also be evaluated under the Sixth Amendment's Confrontation Clause. Standards for admission under Rule 804(b)(5) and the Confrontation Clause are similar, but distinct. *Idaho v. Wright*, 497 U.S. 805, 817, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638 (1990); *Dutton v. Evans*, 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970). When a hearsay statement does not fall within a firmly rooted hearsay exception, there must be a showing of "particularized guarantees of trustworthiness" to satisfy the Confrontation Clause, *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), which must be drawn from the totality of the circumstances. *Wright*, 497 U.S. at 819, 110 S.Ct. at 3149.

Roger Elayyan, a car salesman, testified before the grand jury that he sold the car in this case to a woman and a man. He identified defendant Tucker from a photo spread as the man accompanying the woman who bought the car. This testimony was read into evidence by another government witness.

The district court admitted the grand jury testimony after evaluating the relevant factors for proof of the testimony's trustworthiness. There is no argument over the unavailability of the witness who was in a foreign country at the time of the trial. The district court found the testimony relevant as evidence of Tucker's connection to the car and, therefore, to the gun. As the witness was out of the country, there was no other way to admit the grand jury evidence and identification of Tucker. The district court considered Elayyan a disinterested witness who voluntarily testified under oath and was subject to prosecution for perjury. The court found sufficient corroboration of the testimony because Tucker was driving the car. *See Snyder*, 872 F.2d at 1355–56; *Guinan*, 836 F.2d at 354–55.

Defendant Tucker argues the testimony does not have the requisite circumstantial guarantees of trustworthiness and indicia of reliability. Defendant relies upon the fact that the witness gave the government a false address making it difficult to locate

him. Defendant questions whether the witness was a voluntary witness because of this misinformation. Furthermore, because the witness left this country for Jordan, defendant asserts the government's claim that the testimony was not the result of any pressure is disingenuous. Despite these facts, the district court considered the testimony sufficiently trustworthy.

■ Defendant argues there was insufficient corroboration of the testimony to satisfy our standards for admission. Defendant is correct that there is minimal corroboration of the testimony and identification; the fact that Tucker was driving the car does not corroborate much. But no one factor is determinative of admission. *Guinan*, 836 F.2d at 355. Moreover, the Supreme Court held in *Wright* that corroboration alone does not support a finding of particularized guarantees of trustworthiness. *Wright*, 497 U.S. at 821–25, 110 S.Ct. at 3150–52.

At oral argument, the application of the Supreme Court's recent decision in *United States v. Salerno*, — U.S. —, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992) was raised. The Supreme Court has never decided whether grand jury testimony can be admitted under the residual hearsay exception. *See McKethan v. United States*, 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978) (J. Stewart and J. Marshall dissenting from denial of certiorari because of a difference among the courts of appeals on the admissibility of grand jury testimony under Rule 804(b)(5)). There is a conflict among the circuits as to whether this evidence is admissible. Jack B. Weinstein & Margaret A. Berger, 4 Weinstein's Evidence 804(b)(5)[01] (1985). In *Salerno*, the Court held that grand jury testimony cannot be admitted under Rule 804(b)(1) as former testimony unless all the requirements of the rule have been satisfied. The district court in that case had found that the grand jury testimony did not have the circumstantial guarantees of trustworthiness to satisfy admission under Rule 804(b)(5). That finding was undisturbed by the second circuit's decision and was not discussed in the Supreme Court's opinion.

■ The district judge carefully considered the admissibility of the grand jury testimony, but on balance we do not believe it satisfied the trustworthiness requirements and therefore hold its admission to be error. It is, however, harmless error beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 22, 24, 87 S.Ct. 824, 827, 828, 17 L.Ed.2d 705 (1967). Elayyan testified simply that Tucker was with the woman who bought the car. This evidence is tangential to the issue decided by the jury concerning whether Tucker possessed the gun found under the front seat of the car. Sufficient other evidence fully justified the jury's guilty verdict.

### 5. Recall of the Witness

■ Defendants argue that the district court abused its discretion when it permitted the government to recall the witness Laurie Jolley, a special agent with the Bureau of Alcohol, Tobacco and Firearms. Following the receipt of two notes by a juror asking several questions, the district court told the jury about the notes and stated that the evidence was not all presented and that it would not respond directly to the questions. It appears from the record, however, that the district court allowed the government to recall the witness in order to clear up the questions. The witness testified to new information not covered on direct or cross-examination. Defendants objected at trial to the recall of the witness and thereby properly preserved their objections for appeal.

■ The district court has substantial discretion in its control of the presentation of evidence at trial. *See* Fed.R.Evid. 611(a). Permitting the recall of a witness is within the sound discretion of the district court. *United States v. Maddox*, 944 F.2d 1223, 1230 (6th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 610, 116 L.Ed.2d 633 (1991); *United States v. Liefer*, 778 F.2d 1236, 1249 n. 11 (7th Cir.1985); David W. Louisell & Christopher B. Mueller, 3 Federal Evidence § 334 (1979). Therefore, we will not reverse the district court's ruling unless it abused its discretion. *Maddox*, 944 F.2d at 1230.

Defendants contend that recalling the witness was equivalent to rereading testimony to a jury during deliberations because it highlighted the testimony and gave it undue importance. Defendants claim that the district court should have engaged in a balancing process between the need for the testimony and the risk of overemphasizing the testimony of one party's witness.

We do not believe that the additional testimony by Agent Jolley was unduly emphasized as may occur when testimony is read back to a jury in deliberations. Although the government clearly recalled Agent Jolley in order to answer some of the juror's questions, this was not apparent to the other jurors who did not know the specific questions. Additionally, the district judge told the jury that he would not directly respond to the questions, so the jury had no reason to believe the witness was being recalled for any special purpose. We do not believe that the situation here is like the situation when a jury asks for testimony to be read back during deliberations. This witness gave new testimony and did not repeat information previously given.

■ Although we do not find that the district court abused its discretion when it allowed the government to recall the witness, we do not approve of the practice of recalling witnesses in order to answer individual juror's questions. Rule 611(a) gives the trial judge reasonable control over the presentation of evidence in order to: "(1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Fed. R.Evid. 611(a). But there is a difference between recalling a witness in order to effectively present and ascertain the truth and allowing a witness to respond directly to a juror's questions. The risk is that one side is given an unfair opportunity to strengthen its case as well as perhaps unduly emphasize certain testimony. Because the district court here properly instructed the jury that it was not responding directly to the questions, because the testimony concerned tangential issues to the case, and because the government had not rested its case, we do not find that the district court abused its discretion when it allowed the government to recall the witness.

### 6. Tucker's Enhanced Sentence

Tucker objects to the use of two of his prior convictions for an enhanced sentence. Tucker claims the guilty pleas for those convictions were illegally received because they were not voluntarily and intelligently entered. The district court denied Tucker's motion to preclude the use of the convictions at the sentencing hearing. Tucker's arguments were carefully considered by the district court and rejected. We affirm because we find no basis for defendant's argument.

### Conclusion

For the above reasons, the convictions of defendants Dent and Tucker are affirmed.[1]

AFFIRMED.

---

1. In Judge Easterbrook's concurrence the door appears to be tightly shut, as I read it, against ever using the grand jury testimony of an unavailable witness in a criminal prosecution. Perhaps it should be, but because this case does not require that determination I prefer not to go that far at this time. If this panel were to adopt the rule I see propounded in the concurrence, it would first require en banc consideration by this court. *See* Cir.R. 40(f). Judge Posner writing in *United States v. Boulahanis,* 677 F.2d 586, 589 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982), notes that this court "has been unwilling to hold that the admission of hearsay evidence is a per se violation of the confrontation clause of the Sixth Amendment" and proceeds to hold in the circumstances of that case that it does not. Later, Judge Coffey writing in *United States v. Guinan,* 836 F.2d 350, 358 (7th Cir.), *cert. denied,* 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 907 (1988), comes to the same conclusion. The circuits are divided. *Compare United States v. Panzardi–Lespier,* 918 F.2d 313, 316–17 (1st Cir. 1990) (admissible); *United States v. Curro,* 847 F.2d 325, 327–28 (6th Cir.) (admissible), *cert. denied,* 488 U.S. 843, 109 S.Ct. 116, 102 L.Ed.2d 90 (1988); *United States v. Marchini,* 797 F.2d 759, 763 (9th Cir.1986) (admissible), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1288, 94 L.Ed.2d 145 (1987); *United States v. Murphy,* 696 F.2d 282, 286 (4th Cir.1982) (admissible), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d

EASTERBROOK, Circuit Judge, with whom BAUER, Chief Judge, joins, concurring.

I join the court's opinion, which leaves open the question whether *United States v. Salerno*, —— U.S. ——, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992), requires a fresh look at the introduction of grand jury testimony under Fed.R.Evid. 804(b)(5).

Rule 804(b)(1) provides that statements of an unavailable declarant are admissible, despite the hearsay rule, when the statements are:

> Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Defendants in criminal cases are not represented before the grand jury, and hence lack an "opportunity" to develop the witness' testimony by direct or cross examination. Grand jury testimony is accordingly inadmissible under Rule 804(b)(1) against a defendant in a criminal case.

Bypassing Rule 804(b)(1), the district judge relied on Rule 804(b)(5), one of the residual exceptions to the hearsay rule, which says that a court may admit:

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Roger Elayyan testified before the grand jury but was out of the country during defendants' trial. The district judge permitted the prosecutor to use a transcript of Elayyan's testimony as substantive evidence. The court today holds that Elayyan's statement was inadmissible because not sufficiently trustworthy. That conclusion enables the court to avoid the question whether Rule 804(b)(5) applies to grand jury testimony in the first place.

*United States v. Boulahanis*, 677 F.2d 586, 588–89 (7th Cir.1982), holds that it does. See also *United States v. Snyder*, 872 F.2d 1351, 1354 (7th Cir.1989) (invoking *Boulahanis* without further analysis of the Rules of Evidence and moving on to address potential constitutional obstacles); *United States v. Guinan*, 836 F.2d 350 (7th Cir.1988) (same). But *Boulahanis* does not mention the introductory language limiting Rule 804(b)(5) to "[a] statement not specifically covered by any of the foregoing exceptions". Although *Boulahanis* assumed that Rule 804(b)(1) does not even *apply* to grand jury testimony, so clear is the inadmissibility of such testimony against the defendant under its standards, we know from *Salerno* that Rule 804(b)(1) indeed "applies." Prior testimony of every description is "specifically covered by" Rule 804(b)(1). *Boulahanis* treats Rule 804(b)(5) as if it began: "A statement not specifically *admissible under* any of the foregoing exceptions ...". Evidence that flunks an express condition of a rule can come in anyway. Rule 804(b)(5) reads more naturally if we understand the introductory clause to mean that evidence of a kind specifically addressed ("covered") by one of the four other subsections must satisfy the conditions laid down for its admission, and that other kinds of evidence

1303 (1983); *United States v. Carlson*, 547 F.2d 1346, 1355 (8th Cir.1976) (admissible) *with United States v. Fernandez*, 892 F.2d 976, 982 (11th Cir.1989) (only extraordinarily trustworthy grand jury testimony admissible), *cert. dismissed*, 495 U.S. 944, 110 S.Ct. 2201, 109 L.Ed.2d 527 (1990); *United States v. Thevis*, 665 F.2d 616, 619 (5th Cir.) (dictum) (not generally admissible under evidentiary rules), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). It would appear that the time is coming for us to reconsider the issue, but this is not the case for that as it makes no difference in the unanimous result the panel reaches in this case affirming the conviction.

not covered (because the drafters could not be exhaustive) are admissible if the evidence is approximately as reliable as evidence that would be admissible under the specific subsections.

Some rules take the form: "Evidence is always admissible if conditions A and B hold; if these conditions do not hold, then it is admissible if the court believes that the benefits of using the evidence exceed any shortcomings." Consider how Rule 609 treats prior convictions offered to impeach a defendant: a conviction may be used automatically if it involves dishonesty or false statement, and otherwise the judge balances probative and prejudicial effects. This is how the court of appeals treated Rule 804(b)(1) in *Salerno.* Defendants in a criminal case sought to introduce the grand jury testimony of a person who, having invoked the privilege against compulsory self-incrimination, was "unavailable" to them at trial. The prosecution, the "party against whom the testimony [was] offered," objected, observing that although it had the "opportunity" to examine the witness before the grand jury, it lacked a motive "similar" to that at trial, where it would be deprived of the opportunity to cross-examine the witness. The court of appeals dispensed with the "similar motive" portion of the rule on equitable grounds and held the testimony admissible. 937 F.2d 797, 805–08, modified, 952 F.2d 623 (2d Cir.1991). The Supreme Court reversed, concluding that the Rule must be applied as written. Consistent application of the textualist approach implies taking the introduction to Rule 804(b)(5) equally seriously.

In *Salerno* the United States persuaded the Supreme Court that to introduce prior testimony by an unavailable declarant the proponent of the evidence must satisfy the conditions in Rule 804(b)(1). In our case the United States, concededly unable to satisfy the conditions in Rule 804(b)(1), contends that the judge may admit the evidence anyway after ascertaining that the testimony was trustworthy. I doubt that the Solicitor General took *Salerno* to the Supreme Court in order to change the citation of authority from Rule 804(b)(1) to

Rule 804(b)(5) while leaving the result untouched, or that the Court thought that its opinion would do nothing beyond correcting a typographical error.

True, *Salerno* does not discuss Rule 804(b)(5); neither side suggested that the grand jury testimony would be admissible under that Rule. The district judge had held that the testimony in question did not satisfy the "trustworthiness" requirement, which appears in Rule 804(b)(5) but not in Rule 804(b)(1). *Salerno* therefore does not discuss whether resort to that subsection is appropriate when testimony appears to be more reliable. It would be ironic, though, if the upshot of *Salerno* were that *only* the prosecutor may employ grand jury testimony in criminal cases. Any asymmetry should run the other way: the confrontation clause of the sixth amendment protects defendants, not prosecutors, from out-of-court statements. Although historical exceptions to the hearsay rule do not violate the confrontation clause, new exceptions must overcome a presumption against them. *White v. Illinois,* — U.S. —, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992).

Trial by affidavit was the bugbear that led to the confrontation clause; trial by grand jury testimony is not far removed. Grand jury testimony, like an affidavit, is one-sided, an *ex parte* narration over which the prosecutor has ample control. To avoid the introduction of unilateral narrations, Rule 804(b)(1) provides that prior testimony is admissible only if the party against whom the evidence is offered had both opportunity to examine the declarant and motive to do so. That the testimony has indicia of trustworthiness cannot be controlling; many affidavits *appear* to be trustworthy. A defendant's entitlement to confront the witnesses against him is not limited to confronting apparently-untrustworthy witnesses. Confrontation is valuable in large measure because it may establish that what seems to be accurate is misleading or deceitful or rests on inadequate foundation. Conditions on the use of Rule 804(b)(1) ensure that the defendant retains the right of confrontation in circumstances that lie at the core of the constitu-

tional guarantee. Temptation to get 'round this limitation by moving to Rule 804(b)(5) and slighting its introductory language should be resisted.