**UNITED STATES of America,**

v.

**Maria HSIA, Defendant.**

**No. 98–0057 (PLF).**

United States District Court, District of Columbia.

Feb. 4, 2000.

---

Erica L. Yaffe, John McEnany, Campaign Financing Task Force, Criminal Division, Dept. of Justice, Washington, DC, for government.

Nancy Luque, Rangely Wallace, Andrew L. Hurst, Reed Smith Shaw & McClay, Washington, DC, for defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This matter now is before the Court on (1) the government's motion to admit the grand jury testimony of Venerable Man Ho and Venerable Yi Chu because of their unavailability for trial; and (2) defendant's motion to dismiss certain counts of the indictment or, in the alternative, to suppress all evidence derived from Man Ho and Yi Chu on the ground that these witnesses would provide exculpatory information helpful to the defendant that now is unavailable.

## I. BACKGROUND

From all of the pretrial proceedings in this case, it appears that Venerable Man Ho and Venerable Yi Chu, two monastics associated with the Hsi Lai Temple, are essential government witnesses. They were originally unindicted co-conspirators (before the government moved to dismiss the conspiracy count) and allegedly were deeply involved in virtually all of the conduct relating to the remaining causing false statements counts charged in the indictment. They testified before several congressional committees under grants of immunity and before the grand jury that indicted the defendant. The monastics' grand jury testimony was given pursuant to letters that provided them with use immunity coextensive with the immunity available by statute. Under their grants of immunity, Man Ho and Yi Chu were required to provide complete and truthful testimony to the grand jury and at trial. The government subpoenaed them as trial witnesses and, on the government's motion, the Court continued those subpoenas in full force and effect when the trial date was postponed because of matters pending before the court of appeals.

On September 13, 1999, the Court set a new trial date of January 18, 2000. The government advised Man Ho and Yi Chu of the new date by letter of November 18, 1999. In the interim, both of them had moved to Taiwan, and the Court has been advised by their counsel that Man Ho is assigned to the Fo Kuang Shan Temple and Yi Chu is assigned to a one-year meditation program that purportedly requires her not to travel or have contact with the outside world. By its Memorandum Opinion and Order of January 24, 2000, the Court denied the motion of these two witnesses to reconsider the validity of the trial subpoenas issued for them and/or to recognize their asserted religious obli-

gations as adequate excuses not to appear for trial. The Court ordered them to appear on January 28, 2000 at 9:00 a.m. upon pain of contempt. Neither Man Ho nor Yi Chu appeared on January 28, and neither the government nor the Court has any expectation that they will do so despite the government's having notified their counsel in open court that it intends to ask a grand jury to indict them on felony charges of criminal contempt. It is against this background that the government seeks the admission of their grand jury testimony at trial.

## II. DISCUSSION

A proper analysis of the government's request requires a consideration of both the Confrontation Clause of the United States Constitution and the two hearsay exceptions on which the government seeks to rely: Rule 804(b)(3) of the Federal Rules of Evidence, which permits the admission of out-of-court statements against interest by unavailable witnesses, and Rule 807, the so-called residual exception to the hearsay rule. As the party seeking to introduce hearsay evidence, the government has the burden of proving each element of the exceptions it asserts. *See Idaho v. Wright,* 497 U.S. 805, 816, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *United States v. Bartelho,* 129 F.3d 663, 670 (1st Cir.1997); *United States v. Glenn,* 473 F.2d 191, 197 (D.C.Cir.1972).

■ The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. The Confrontation Clause reflects a strong preference for face-to-face confrontations at trial: "a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner

in which he gives his testimony whether he is worthy of belief." *Mattox v. U.S.,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 39 L.Ed. 409 (1895).

■ Yet the Confrontation Clause does not require the exclusion of hearsay evidence in all circumstances. Under the Confrontation Clause hearsay statements that contain sufficient indicia of reliability and trustworthiness may be admitted. Where a hearsay declarant has not been and will not be subjected to cross-examination, however, the Confrontation Clause requires the Court to satisfy itself both that the declarant is genuinely unavailable to testify despite the prosecution's good faith efforts to obtain the witness' presence at trial and that the out-of-court statement bears sufficient indicia of reliability as to provide the jury with an adequate basis to evaluate the truth of the testimony. *See Ohio v. Roberts,* 448 U.S. 56, 64–65, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Where the evidence "falls within a firmly rooted hearsay exception," reliability may be inferred, *id.* at 66, 100 S.Ct. 2531; otherwise the government bears a heavy burden of showing "particularized guarantees of trustworthiness." *Idaho v. Wright,* 497 U.S. at 816–17, 110 S.Ct. 3139 (quoting *Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. 2531). The hearsay exception embodied in Rule 804(b)(3) is one that is "firmly rooted" in the common law. *See United States v. Saccoccia,* 58 F.3d 754, 779 (1st Cir.1995); *United States v. York,* 933 F.2d 1343, 1363 (7th Cir.1991); *but see United States v. Flores,* 985 F.2d 770, 775–76 (5th Cir.1993) (not "firmly rooted"). The residual exception of Rule 807 is not so "firmly rooted." *See Idaho v. Wright,* 497 U.S. at 816–17, 110 S.Ct. 3139 (residual hearsay exception not firmly rooted exception for Confrontation Clause purposes); *United States v. Accetturo,* 966 F.2d 631, 634 (11th Cir.1992) (residual exception not "firmly rooted").

### A. Rule 804(b)(3)

■ For a statement to be admitted under Rule 804(b)(3) of the Federal Rules

of Evidence, the government must demonstrate (1) that the witness is unavailable, (2) that the government has made reasonable efforts to obtain the presence of the witness for trial, and (3) that at the time it was made the statement was "so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Rule 804(b)(3), Fed.R.Evid. A statement is admissible under Rule 804(b)(3) as being against pecuniary or proprietary interest "when it threatens the loss of employment, or reduces the chances for future employment, or entails possible civil [or criminal] liability." *Gichner v. Antonio Troiano Tile & Marble Co.*, 410 F.2d 238, 242 (D.C.Cir.1969).

■ Defendant first argues that Venerable Man Ho and Venerable Yi Chu are not in fact unavailable and/or that the government has failed to make reasonable efforts to obtain their presence for trial. Defendant maintains that although the government served process on these witnesses nearly two years ago, it has made little or no effort to procure their appearance since that time: it did not contact these immunized witnesses for more than fourteen months, did not place (or seek to have the Court place) restrictions on their travel or availability, did not notify them of the pending trial date until two months after that date had been set by the Court, and did not seek alternative means of preserving their testimony.

The government responds that its efforts have been reasonable because the immunity agreements requiring that Man Ho and Yi Chu provide complete and truthful testimony at trial at least implicitly required their presence, because the government in fact subpoenaed them to appear for trial, and because the government formally notified their counsel of the new trial date well in advance of trial. At this point the Court will not attempt to

assess blame for the unavailability of Man Ho and Yi Chu. The fact is that they have absented themselves from the United States and are unavailable for trial despite their obligations to the Court by virtue of its subpoenas and to the government by virtue of its immunity letters. While it would have been better had the government notified these witnesses of the new trial date as soon as it had been set, the Court finds that the government has made reasonable efforts to obtain their presence.

■ The question under Rule 804(b)(3) therefore turns on whether the statements made by Man Ho and Yi Chu to the grand jury are statements "so far contrary" to their pecuniary interests *or so far tending* to subject them to criminal or civil liability that reasonable persons in their positions would not have made the statements unless they then believed them to be true. *See Williamson v. United States*, 512 U.S. 594, 603–04, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). The government makes two arguments in support of the admission of Man Ho and Yi Chu's grand jury testimony on this basis. First, it argues that while under oath both Man Ho and Yi Chu admitted participating in a conduit contribution scheme in violation of Section 437g of the Federal Election Campaign Act. *See* 2 U.S.C. § 437g(a)(6). While they testified under grants of immunity from criminal prosecution, the government argues that they knew at the time of their testimony that they still faced substantial civil penalties under FECA and that the agreements they signed put them on notice of that fact. Second, the government argues that the witnesses faced potential repercussions from their superiors at the Hsi Lai Temple for having implicated them and the Temple in wrongdoing. The government therefore argues that the incriminating statements exposing Man Ho and Yi Chu and the Temple to substantial penalties were statements contrary to their pecuniary interests and therefore makes them admissible under Rule 804(b)(3).

Defendant responds that there is no evidence that Venerable Man Ho and Venerable Yi Chu either understood the potential for civil liability or thought that such liability was a real possibility at the time they made their statements to the grand jury. While the immunity letters indicate that the witnesses acknowledged and agreed that the Department of Justice could not bind the Federal Election Commission or make any promises or representations regarding any civil proceedings that might be instituted by the FEC, defendant suggests that this kind of boilerplate language in an immunity letter hardly supports the argument that the monastics were in fact likely to be pursued by the FEC or subjected to civil liability, or that the monastics understood that prospect. Defendant also maintains that the argument regarding the possibility of repercussions from the Temple is sheer speculation. She contends that the government has provided no evidence that such repercussions would be forthcoming, that the monastics' relationship with their religion appears to be thriving, and that the monastics and the Temple were represented by the same counsel at the time the statements were made to the grand jury and counsel would not have represented both if their interests had not been strongly congruent. With respect to this second argument, the Court agrees fully with the defendant and finds the potential for repercussions from the Temple unsupported and speculative. The first argument requires greater consideration.

 Out-of-court statements against the declarant's interest are admissible under Rule 804(b)(3) of the Federal Rules of Evidence because it is presumed that one will not make a statement damaging to one's self unless it is true. In order for that premise to pertain, however, the declarant must in fact perceive that the statement is against her interest. Only if

the statement is in fact against the witness' interest—in fact, it must be "so far contrary to" the witness' interest—and only if the witness perceives and understands the potential consequences is it fair to conclude that the otherwise inadmissible statement is trustworthy and reliable and therefore admissible. In this case, the witnesses already had immunity from criminal prosecution. The question therefore is whether they nevertheless perceived that they might continue to face civil penalties by virtue of their statements before the grand jury.

The civil penalties of FECA that could be imposed in this case are potentially substantial—both Man Ho and Yi Chu appear to admit conduct in their grand jury testimony that could justify fines in excess of $100,000. The government, however, has presented insufficient evidence that Man Ho and Yi Chu were aware of their potential liability when they testified. One paragraph in the immunity letters signed by both witnesses addresses the inability of the Department of Justice to bind the FEC or make any representations or promises regarding any civil proceedings that may be initiated by the FEC. It is doubtful that the boilerplate language used in this paragraph would put even an English-speaking person on notice of the potential for continuing civil liability, much less a person for whom English is a second language.[1] In addition, the only relevant indication from the monastics' grand jury testimony of what they perceived suggests that they may well have thought their testimony would have no negative personal repercussions whatsoever. Specifically, in her testimony, Man Ho answered affirmatively the government's unqualified question regarding whether she understood that "your answers cannot be used against you, directly or indirectly." Grand Jury Transcript of Man Ho (Sept. 26, 1997) at 5. Yi Chu was asked if she had signed the

---

1. The government has not advised the Court that the immunity letters were ever translated into Chinese or that counsel for the monastics explained the paragraph concerning the FEC.

Yi Chu in particular has difficulty communicating in any language other than Mandarin Chinese.

immunity agreement, but was asked no specific question regarding her understanding of the consequences of the agreement. *See* Grand Jury Transcript of Yi Chu (Oct. 3, 1997) at 5.

Because the government has presented no evidence of the monastics' knowledge of their potential civil liability other than the inclusion of a boilerplate provision in the immunity agreement written in English, and because the only indication of the monastics' state of mind from the grand jury transcripts is that they believed that they had full and unqualified immunity, the Court cannot conclude that these witnesses at the time they made their statements to the grand jury knew them to be so far contrary to their interests that the statements have the necessary indicia of reliability. The government certainly has not demonstrated that they did, even by a preponderance of the evidence. *See Idaho v. Wright*, 497 U.S. at 816, 110 S.Ct. 3139; *United States v. Bartelho*, 129 F.3d at 670; *United States v. Glenn*, 473 F.2d at 197.

The Court reaches this conclusion against the backdrop of the Confrontation Clause and the skepticism with which courts traditionally view statements against interest in criminal cases that may actually have been made to gain an advantage or curry favor, such as those made pursuant to a plea bargain or immunity agreement. *See infra* at 14. While the exception to the hearsay rule contained in Rule 804(b)(3) is "firmly rooted" in the Constitution, that fact only takes the Court so far. In a criminal case, a defendant generally has the right to confront the witnesses against him or her, and the government still has the burden of proving that an out-of-court statement bears sufficient indicia of reliability. Courts have always been more skeptical of admitting uncross-examined hearsay in the form of

grand jury testimony against a criminal defendant than they are of admitting such testimony when offered by a defendant in a criminal case. *Compare United States v. Lang*, 904 F.2d 618, 624 (11th Cir.1990) (grand jury testimony rarely admitted against defendant under residual exception to hearsay rule); *United States v. Vigoa*, 656 F.Supp. 1499, 1506 (D.N.J.1987) (same) *with United States v. Salerno*, 505 U.S. 317, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992) (defendant could introduce grand jury testimony under Rule 804(b)(1) of the Federal Rules of Evidence if the government had a "similar motive" to develop declarant's testimony in the grand jury as it would have had at trial). The grand jury testimony of Man Ho and Yi Chu is not admissible under Rule 804(b)(3).

### B. Rule 807

The residual exception to the hearsay rule permits the introduction of a hearsay statement "not specifically covered by Rule 803 or 804 but having equivalent substantial guarantees of trustworthiness" if the Court makes certain findings. Rule 807, Fed.R.Evid.[2] For an out-of-court statement of a declarant to come in under Rule 807, the proponent of the testimony must demonstrate (1) that the declarant is unavailable, (2) that it has made reasonable efforts to make the declarant available for trial, (3) that the statement is offered as evidence of a material fact, (4) that the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, (5) that the hearsay statement has circumstantial guarantees of trustworthiness, and (6) that the interests of justice would be best served by admission of the statement. *See*

---

**2.** Since grand jury testimony arguably is specifically covered by another rule, it is questionable whether grand jury testimony is ever admissible under Rule 807. *See, e.g., United States v. Dent*, 984 F.2d 1453, 1465–67 (7th Cir.1993) (Easterbrook, J., concurring); *Unit-*

*ed States v. Vigoa*, 656 F.Supp. at 1504, 1506. For purposes of this motion, however, the Court will assume that such evidence is admissible under Rule 807 in some circumstances.

*id.*[3]

For the reasons previously discussed, the Court finds that the witnesses are unavailable and that the government has made reasonable efforts to make them available for trial. The Court also finds that the testimony of Man Ho and Yi Chu regarding their involvement in the contribution conduit scheme leading to the filing of allegedly false statements with the FEC, and their testimony about the alleged link between the defendant and the Hsi Lai Temple in the solicitation of such contributions and the reporting of those contributions, would constitute evidence of material facts. Based on the government's representations, the Court finds that the statements are more probative on the points for which they are offered than any other evidence that the government can now procure through reasonable efforts. As the government has said, "[n]othing can replace the testimony of these witnesses." Government Motion at 16.[4] The remaining questions therefore are whether the proffered grand jury testimony carries sufficient indicia of reliability and trustworthiness and whether the interests of justice would be served by the admission of those statements.

■ To repeat, the Confrontation Clause generally requires that a defendant in a criminal case be allowed to confront and face her accusers at trial. While there are circumstances in which prior testimony of an unavailable witness is admitted—particularly when that prior testimony was given in an adversarial context such as at a

deposition, a preliminary hearing or a civil trial, *see* Rule 804(b)(1), Fed.R.Evid.—it is the rare case when uncross-examined testimony is admitted against an accused in a criminal trial. The courts' general approach to statements offered under the residual exception is that they are presumptively unreliable and inadmissible for Confrontation Clause purposes and that the proponent must demonstrate a particularized guarantee of trustworthiness to overcome that presumption. *See Idaho v. Wright,* 497 U.S. at 817–18, 110 S.Ct. 3139. While some courts have admitted grand jury testimony against an accused under the residual exception, the infrequency of such rulings highlights the strong preference for allowing the jury to evaluate both the substance of a witness' testimony and her credibility through the crucible of cross-examination. *See White v. Illinois,* 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (quoting *California v. Green,* 399 U.S. 149, 156, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)) ("The preference for live testimony in the case of statements [from prior judicial proceedings] is because of cross-examination, 'the greatest legal engine ever invented for the discovery of truth' ").

■ Venerable Man Ho and Venerable Chi Yu speak Mandarin Chinese and testified in the grand jury with the assistance of an interpreter.[5] The government itself previously raised questions about the truthfulness of these witnesses and asked the Court for the opportunity to attack their credibility at trial (if they testified)

3. The Rule also requires that the party seeking admission of the statement provide notice to the adverse party sufficiently in advance of trial to provide the adverse party with a fair opportunity to meet the evidence. Defendant has been on notice at least since January 11, 2000, the date that Venerable Man Ho, Venerable Yi Chu and Venerable Abbess Tzu Jung filed a motion to reconsider the Court's Order regarding trial subpoenas. '

4. For that reason, the Court previously indicated its willingness to grant a government request for a continuance of the trial to enable the government to obtain the presence of these witnesses, but the government stated that it did not seek a continuance and would proceed to trial with or without Man Ho and Yi Chu.

5. Man Ho testified in English but was assisted by an interpreter with regard to certain specifics of the English language. *See* Grand Jury Transcript of Man Ho (Sept. 26, 1997) at 3. Yi Chu testified in Mandarin Chinese and made full use of an interpreter. *See* Grand Jury Transcript of Yi Chu (Oct. 3, 1997) at 3.

both by permitting the government to ask leading questions (because of the witnesses' alleged identity with the defendant) and by introducing evidence that these witnesses altered, destroyed and created documents in an effort to conceal their wrongful conduct and that of the defendant. Despite the government's grant of immunity, the government does not vouch for everything these witnesses have said or will say in testimony. As the government prosecutor has stated:

> And in this case we believe that certain things are going to be irrefutable that [Man Ho and Yi Chu] say and [they] are going to be telling the truth as to certain things but in other things they're not telling the truth. It's going to be those people there [pointing to the jury box] who are going to assess their credibility and it's going to be perhaps initially an assumption that these people are telling the truth because they're going to be coming in in saffron robes, they're nuns and monks from a religious Order and there may be a tendency to believe everything that they say, including those things that we believe are not true.

> In order to assess their testimony, Yi Chu and Man Ho, [the members of the jury] have to know the entirety of their actions. And these folks are people and they do things like alter documents and change documents and they have maybe some incentive to protect the Temple and Maria Hsia, and that's part of weighing their credibility and we should be able to get in this evidence in in order for the jurors to have a complete picture of these witnesses.

Transcript of January 18, 2000 Hearing at 141–42. Accepting this argument, the Court denied defendant's motion to exclude evidence of alteration, destruction and creation of documents by Man Ho and Yi Chu, stating in part that such evidence offered by the government is relevant for the jury to consider in assessing the credibility of these witnesses. *See* Memorandum Opinion and Order of February 2, 2000.

There are no strong indicia of reliability and trustworthiness with regard to the monastics' testimony. These unindicted co-conspirators testified under immunity agreements through an interpreter and answered mostly leading questions. *See United States v. Gonzalez*, 559 F.2d 1271, 1273 (5th Cir.1977) (responses given to leading questions and not subject to cross-examination); *United States v. Vigoa*, 656 F.Supp. at 1506 ("testimony consisted of little more than 'yes' and 'no' responses to leading questions posed by the prosecutor"). Their credibility has been questioned by their own sponsor, the government. In addition, their obligations under the immunity agreement and the oath they took to testify truthfully only go so far in assuring the reliability of their out-of-court statements. As Judge Merritt has noted, persons with immunity still often have a motive to lie, to testify truthfully about some matters and falsely about others, to minimize their own involvement and maximize the involvement of others, or to curry favor with the government. *See United States v. Gomez–Lemos*, 939 F.2d 326, 333–34 (6th Cir.1991). *see also United States v. Johnson*, 802 F.2d 1459, 1465 (D.C.Cir.1986) ("It is common knowledge that an arrestee can 'curry[ ] favor with law enforcement authorities by implicating others in the offense' ") (quoting *United States v. Coachman*, 727 F.2d 1293, 1296 (D.C.Cir.1984)).

"[O]nly extraordinarily trustworthy grand jury testimony could possibly be admissible as truth of the matter asserted," and the threshold is high indeed to find it so trustworthy and reliable as to permit its admission under Rule 807. *United States v. Lang*, 904 F.2d at 624 (quoting *United States v. Fernandez*, 892 F.2d 976, 981–82 (11th Cir.1989)). The rule requires circumstantial guarantees of trustworthiness equivalent to cross-examined or non-hearsay testimony or to statements admitted under the hearsay excep-

tions of Rules 803 and 804 of the Federal Rules of Evidence. The oath taken by the declarants here is the only thing that raises the testimony of Man Ho and Yi Chu above the level of ordinary inadmissible hearsay, and that oath is not enough to allow the admission of the testimony in light of the other indicators undermining the truthfulness of these witnesses. *See United States v. Fernandez,* 892 F.2d at 981.

As Judge Easterbrook has pointedly noted in rejecting the availability of the residual exception to admit grand jury testimony:

> Trial by affidavit was the bugbear that led to the Confrontation Clause; trial by grand jury testimony is not far removed. Grand jury testimony, like an affidavit, is one-sided, an ex parte narration over which the prosecutor has ample control. To avoid the introduction of unilateral narrations, Rule 804(b)(1) provides that prior testimony is admissible only if the party against whom the evidence is offered had both opportunity to examine the declarant and motive to do so. That the testimony has indicia of trustworthiness cannot be controlling; many affidavits appear to be trustworthy. A defendant's entitlement to confront the witnesses against him is not limited to confronting apparently-untrustworthy witnesses. Confrontation is valuable in large measure because it may establish that what seems to be accurate is misleading or deceitful or rests on inadequate foundation. Conditions on the use of Rule 804(b)(1) ensure that the defendant retains the right of confrontation in circumstances that lie at the core of the constitutional guarantee. Temptation to get 'round this limitation by moving to Rule 804(b)(5) [now Rule 807] and slighting its introductory language should be resisted.'

*United States v. Dent,* 984 F.2d 1453, 1466 (7th Cir.1993) (Easterbrook, J., concurring). The grand jury testimony of Man

Ho and Yi Chu therefore is not admissible under rule 807.

### C. Defense Motion To Dismiss Counts Based On Unavailability Of Exculpatory Information

The Court's decision to deny the government's motion to admit Man Ho and Yi Chu's grand jury testimony because of their unavailability to testify in person at trial largely moots the defendant's motion to dismiss certain counts of the indictment or suppress evidence derived from Man Ho and Yi Chu because of the unavailability of the exculpatory evidence they purportedly could provide. If these witnesses are not present to provide inculpatory testimony, they cannot provide exculpatory testimony either. Both sides suffer—or benefit, as the case may be—from their absence. To the extent that defendant's motion was motivated by a concern about leveling the playing field, the Court's decision to exclude the grand jury testimony of these witnesses on hearsay grounds means that the jury will not be able to consider the uncross-examined inculpatory evidence without also having the witnesses examined about "exculpatory information in the possession of only those witnesses." Motion to Dismiss at 10. Both sides will suffer from the absence of the witnesses and their testimony. Indeed, if either party is harmed more than the other by the absence of Man Ho and Yi Chu it is the government, which now must prove guilt beyond a reasonable doubt without its key witnesses.

Defendant's motion also must fail because it is premised on the assumption that the government is at fault for the witnesses' failure to appear or that it has made insufficient efforts to obtain their presence. It is hard to see, however, how the government could possibly benefit from the loss of these crucial witnesses or their testimony. Defendant's suggestion that the government has some nefarious reason to orchestrate or capitalize on the absence of the witnesses is an unfair as-

persion on the government prosecutors. As the government rightly notes: "[F]ar from suffering a loss of exculpatory evidence, the defendant's case is substantially aided, not harmed, by the absence of these witnesses." Government Opposition to Motion to Dismiss at 3. There is no basis to give defendant the relief she seeks.

An Order consistent with this Opinion shall be issued this same day.

SO ORDERED.